UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                             Chapter 11

**5902 HUDSON AVE LLC,**                             Case No:  25-42224-ess

                        Debtor.
-------------------------------------------------------------X

# SECOND AMENDED DISCLOSURE STATEMENT FOR
# SECOND AMENDED PLAN OF REORGANIZATION OF
# <u>5902 HUDSON AVE LLC</u>

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**SHAFFERMAN & FELDMAN LLP
Counsel for the Debtor
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802**

**Joel Shafferman**

**Dated:** New York, New York
        May 26, 2026

## SUMMARY

5902 Hudson Ave LLC, (the "Debtor"), has filed its second amended plan of reorganization, dated May 26, 2026 (the "Plan")[1], with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This *Second Amended Disclosure Statement for the Second Amended Plan of Reorganization of 5902 Hudson Ave LLC* (the "Disclosure Statement") is being submitted for the approval of the Bankruptcy Court for use in connection with the solicitation of acceptances of the Plan from holders of Claims against and Interests in the Debtor pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

A copy of the Plan accompanies this Disclosure Statement. A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan.

**The Debtor believes that Confirmation of the Plan is in the best interests of its Estate.**

## BACKGROUND

The Debtor owns the real property and improvements thereon located at 5902 Hudson Avenue, West New York, NJ 07093 (Lot 2, Block 61 on the official Tax Map of the Town of West New York, Hudson County) (the "Property"). The Property is a 7,720 square foot, four-story, walk-up, multi-family building consisting of 8 residential units. All units are rent controlled units. The Debtor acquired the Property on June 15, 2016, for the sum of $835,000.00 through an all-cash transaction.

On or about March 19, 2021, the Debtor refinanced the Property by securing a loan from Coventus, LLC (the "Original Lender") in the original principal amount of $1,050,000.00. The loan was then assigned to U.S. Bank National Association (the "Lender").

This case was filed on May 7, 2025 to stop the foreclosure sale of the Property that was scheduled in connection with an action entitled U.S. Bank National Association Not In Its Individual Capacity But Solely As Trustee for Plaza RTL Trust v. 5902 Hudson Ave, LLC and Coventus LLC (Index No. SWC-F-013251-23) pending in the Superior Court of New Jersey, Chancery Division, Hudson County (the "State Court Action"), and thereby, preserve the Property for the benefit of the Debtor's creditors and its estate. Without commencing this Chapter 11 case, the Debtor would have lost the Property.

### Debtor's Chapter 11 Case

On May 7, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its

---

[1] For the avoidance of doubt, all terms defined herein as they pertain to the Plan shall take their definitions from the Plan.

properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor commencement of its Chapter 11 case stayed the State Court Action.

In its Schedule A/B [ECF Doc. No. 16], the Debtor listed the value of the Property as being unknown.

On or around, September 18, 2025, the Debtor obtained an appraisal of the Property, a copy of which is attached hereto as **Exhibit "A"**, showing that the value of the Property is $700,000.

On August 18, 2025, U.S. Bank filed a motion seeking modification of the automatic stay provisions of section 362(a) of the Bankruptcy Code [ECF Doc. No. 33] (the "Lift Stay Motion"). On September 25, 2025, the Debtor filed opposition papers to the Lift Stay Motion [ECF Doc. Nos. 44 and 45].

On August 4, 2025, the Debtor filed its initial plan and disclosure statement with this Court [ECF Doc. Nos. 27 & 28].  On February 6, 2026, U.S. Bank filed an objection to the plan and disclosure statement [ECF Doc. No. 35].

On November 26, 2025, the Bankruptcy Court approved a Stipulation and Order by and between the Debtor and U.S. Bank permitting the Debtor's use of cash collateral and providing for adequate protection payments [ECF Doc. No. 35].

On August 4, 2025, the Debtor filed its first amended chapter 11 plan and first amended disclosure statement with this Court. [ECF Doc. Nos. 64 & 65].  On March 3, 2026, U.S. Bank filed a Notice of Election Under 11 U.S.C. §1111(b) (the "Section 1111(b) Election").  [ECF Doc. No. 68]. On March 13, 2026,  U.S. Bank filed an objection to the first amended plan and first amended disclosure statement [ECF Doc. No. 68].

The Debtor has filed the Plan and this Disclosure Statement in response to the objections to confirmation filed by U.S. Bank and its filing of the Section 1111(b) Election[2].

The table below provides a summary of the classification and treatment of Claims and Interests under the Plan.  The figures set forth in the table below represent the Debtor's best estimate of the total amount of Allowed Claims and Allowed Interests in the Case.  These estimates have been developed by the Debtor based on an analysis of the Schedules filed by the Debtor, the Proofs of Claims and Proofs of Interests filed by Creditors and Interest Holders, and certain other documents of public record.  See "SIGNIFICANT EVENTS IN THE CASE -- Bar Date."  Although the Debtor believes that the amounts of the claims set forth below are substantially correct, there can be no assurance that Claims and Interests will be allowed by the Bankruptcy Court in the amounts set forth below:

---

[2] As a result, the Debtor has revised the treatment of U.S. Bank to provide it to receive payments under the New U.S. Bank Note, which  provides for payments to U.S. Bank with a present value (as of the effective date of the plan) equal to $700,000, which is the amount that U.S. Banks' secured claim would have been had it not made the §1111(b) election, with the total payments that U.S. Bank will receive under the Plan being $1,262,693.45.  Additionally, U.S. Bank will retain its lien on the Property during the full term of the New U.S. Bank Note.

| Class and Estimated Amount[3] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| Approximately $30,000.00 | Administrative Claims (including Claims for Professional Compensation and Reimbursement, Post-petition Ordinary Course Liabilities and Post-petition Tax Claims. | **Unimpaired.** Subject to the provisions of article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash, in full on (i) the later of (x) the Effective Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.<br><br>Administrative Claims are Unimpaired and are not entitled to vote to accept or reject the Plan. |
| Class 1 No Known Claims | Priority Claims (other than Administrative Claims) | **Unimpaired.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of each Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.<br><br>Priority Claims are Unimpaired and are not entitled to vote to accept or reject the Plan. |
| Class 2 No Known Claims | Other Secured Claims | Unimpaired. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Other Secured Claims shall receive the following treatment: on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Other Secured Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of each Other Secured Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim**.** |

---

[3] The amounts set forth in this schedule and claims described herein are not, and should not be, deemed admissions by the Debtor as to the validity or amount of any claim.

| Class and Estimated Amount[3] | Type of Claim or Equity Interest | Summary of Treatment |
|---|---|---|
| Class 3<br><br>Claim, in the filed amount of $1,262,693.45 | U.S. Bank Secured Claim | **Impaired.** Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, settlement and release of, and in exchange for, the U.S. Bank Secured Claim, U.S. Bank shall receive on the Effective Date, the New U.S. Bank Note. The U.S. Bank Secured Claim, as evidenced by the New U.S. Bank Note, in the principal amount of $704,579.64, shall be secured by the same collateral U.S. Bank held prior to the Petition Date. The New U.S. Bank Note shall accrue interest at rate of 4.35%, payable on a monthly basis, as set forth in the New U.S. Bank Note, and shall mature on the thirtieth (30th) anniversary of the Effective Date. On the maturity date, any remaining principal due plus all accrued interest shall be due and payable, provided however, that the Reorganized Debtor/Disbursing Agent shall be permitted to prepay the New U.S. Bank Note at any time without premium or penalty. After 30 years of payments, U.S. Bank will have received payments totaling $1,262,693.45.<br><br>The U.S. Bank Secured Claim is Impaired and is not entitled to vote to accept or reject the Plan. |
| Class 4<br>Scheduled amount of $1,633,750.00[4] | General Unsecured Claim | **Impaired.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Class 4 General Unsecured Claims, the holder of such Claims shall receive the following treatment: on the Effective Date, or as soon as possible after such Claims become Allowed Claims, each holder of a Class 4 General Unsecured Claim shall receive from the Disbursing Agent, unless otherwise agreed in writing between the Debtor and the holder of such Claim, its Pro Rata payment from the Unsecured Creditors' Fund.<br><br>Class 4 Claims are Impaired, and the holders of Class 4 Claims are entitled to vote to accept or reject the Plan |
| Class 5 | Equity Interests | **Impaired.**<br><br>Class 5 Equity Interests are not receiving any distribution under the Plan but are entitled to continued ownership of Interests based upon their funding of the Unsecured Creditors' Fund.<br><br>Class 5 Equity Interests are Impaired and are entitled to vote to accept or reject the Plan |

---

[4] The holders of General Unsecured Claims in Class 4 are scheduled creditors: Property Bell ($17,800.00; Robert Timsit ($1,600,000); Zev Schwartz ($14,950); and filed claimant State of New Jersey Division of Taxation ($1,000).

5

**CONFIRMATION OF THE PLAN**

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on **August      , 2026 at   m, Prevailing Eastern Time** (the "Hearing Date"), before Honorable Elizabeth S. Stong, United States Bankruptcy Judge for the Eastern District of New York (the "Confirmation Hearing"). The Confirmation Hearing will be conducted in person. It is necessary to contact the Courtroom Deputy to request prior authorization to appear remotely. Whether appearing in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing.  **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) and section 1129(b) of the Bankruptcy Code**.  Confirmation makes the Plan binding upon the Debtor, its Interest Holders, all Creditors and other parties regardless of whether they have accepted the Plan.

With the entry of the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan, the distributions provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against or Interests in the Debtor or any of its assets or property, including any Claim or Interest accruing after the Petition Date and before the Confirmation Date.  As of the Effective Date, all holders of Claims or Interests will be precluded from asserting any Claim against the Debtor or its assets or property or other interests in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.

**VOTING INSTRUCTIONS — SUMMARY**

The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS."  If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General**.  The Debtor has sent by first class mail to all of its known Creditors who are in Classes impaired under the Plan a ballot with voting instructions and a copy of this Disclosure Statement. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan.  Creditors should read the ballot carefully and follow the voting instructions.  Creditors should only use the official ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and more than one-half in number of claims in each class who actually vote on the Plan.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the class rejecting it and (ii) at least one impaired class of creditors excluding insiders has accepted the Plan.  See "REQUIREMENTS FOR CONFIRMATION" and "EFFECT OF CONFIRMATION."

**As the preceding paragraph makes evident, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan.  YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT.  Creditors should exercise their right to vote to accept or reject the Plan.**

**Voting Multiple Claims and Interests**.  A single form of ballot is provided for each Class of Claims.  Any Person who holds Claims in more than one Class is required to vote separately with respect to each impaired Class in which such Person holds Claims.  However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person.  Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots**.  The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtor, no later than 5:00 p.m., Eastern Standard Time, on   , 2026 at the following address:

> Shafferman & Feldman LLP
> 137 Fifth Avenue, 9th Floor
> New York, New York 10017
> Attn: Joel Shafferman, Esq.

**Voting Questions**. If you have any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing your ballot, you may contact Joel Shafferman, Esq. at (212) 509-1802 or 917 847-8050.

**NOTICE TO HOLDERS OF CLAIMS AND INTERESTS**

This Disclosure Statement and the accompanying ballots are being furnished by the Debtor to the Debtor's known Creditors pursuant to section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of a plan of reorganization by the Debtor. The Plan is filed with the Bankruptcy Court and is incorporated herein by reference. Parties in interest may view the Plan on the Internet at http://www.nyeb.uscourts.gov.[5]

The purpose of this Disclosure Statement is to enable you, as a Creditor whose Claim is in a Class impaired under the Plan to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR. THE STATEMENTS AND OPINIONS SET FORTH HEREIN ARE THOSE OF THE DEBTOR, AND NO OTHER PARTY HAS ANY RESPONSIBILITY WITH RESPECT THERETO.**

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE. THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared using the Debtor's books and records and certain filings made with the Bankruptcy Court. The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, except as noted in the Disclosure Statement, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's independent public accountants.

Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements, or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity, allowance, or amount of any such claim, document or agreement. The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

---

[5] A password is necessary for access to view documents on the Internet.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, as well as descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling. In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS." No statements or information concerning the Debtor or its assets, results of business operations or financial condition are authorized by the Debtor other than as set forth in this Disclosure Statement.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors and Interest Holder to be informed about the Plan. Each holder of a Claim or Interest should review this Disclosure Statement. Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or its business or the Plan, other than the information contained in this Disclosure Statement. You should not rely on any information relating to the Debtor or its business or the Plan other than that contained in this Disclosure Statement.

## PROPONENT'S RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors and Interest Holders under the Plan provides a greater recovery than is likely to be achieved under any other alternatives, including liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in a chapter 7 liquidation, administrative costs will be greater, and it is unlikely that unsecured creditors would receive any distribution on account of their Claims.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATE.**

### RETENTION OF PROFESSIONALS

Section 327(a) of the Bankruptcy Code provides that the Debtor, with the court's approval, may employ one or more accountants or other professional persons that do not hold or represent an

interest adverse to the estate and that are disinterested persons to represent or assist the Debtor in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

The Debtor has filed an application to approve its retention of the law firm Shafferman & Feldman LLP as its bankruptcy counsel [ECF Doc. No. 21].

The Debtor expects to, forthwith, file an application to employ FIA Capital Partners, LLC and David Goldwasser as Chief Restructuring Officer.

**OPERATING REPORTS**

Pursuant to the requirements of the Office of the United States Trustee for the Eastern District of New York, the Debtor will prepare and file monthly operating reports with the Bankruptcy Court detailing the results of the Debtor's ongoing business operations.  Copies of such reports may be obtained from the Bankruptcy Court during normal business hours or may be obtained upon written request made to counsel for the Debtor.

**BAR DATE**

In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, on the Petition Date, the Debtor filed its Schedules of its assets and liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors.  Pursuant to section 501 of the Bankruptcy Code any creditor or interest holder may file a Proof of Claim or Interest and, unless disputed, such filed Proof of Claim supersedes the amount and priority set forth in the Debtor's schedules. The Court set September 16, 2025 as the deadline for creditors to file proofs of claim in the Debtor's case. There can be no assurance that the Allowed Claims as determined by the Bankruptcy Court will be in the amounts and priorities stated in the Schedules filed by the Debtor or proofs of claim filed by Creditors.

**SUMMARY OF THE PLAN**

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, a copy of which accompanies this Disclosure Statement and which is incorporated herein by reference.

### CLASSIFICATION OF CLAIMS

Classification of claims is governed, in part, by sections 1122 and 1123(a) of the Bankruptcy Code. Section 1123(a) requires that a plan designate classes of claims, requires that the plan specify the treatment of any impaired class of claims, and requires that the plan provide the same treatment for each claim of a particular class, unless the holder of a claim receiving less favorable treatment consents to such treatment. 11 U.S.C. § 1123(a)(1), (3) and (4). Section of 1122(a) of the Bankruptcy Code provides, subject to an exception for administrative convenience, that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

CLASSIFICATION OF CLAIMS AND INTERESTS

Article 3 of the Plan classifies the various Claims against and Interests in the Debtor into five (5) classes of Claims and one (1) class of Interests:

Class 1 -     Priority Claims
Class 2 -     Other Secured Claims
Class 3-      U.S. Bank Secured Claim
Class 4 -     General Unsecured Claims
Class 5 -     Equity Interests

As set forth in Article 2 of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims against the Debtor have not been classified.  See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims." Claims in Classes 1 and 2 are unimpaired under the Plan. The votes of Holders of Claims in Classes 1 and 2 are therefore NOT being solicited and are NOT entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan.

Claims in Classes 3 and 4 and Interests in Class 5 are impaired under the Plan. Holders of Claims in Classes 3 and 4 and Interests in Class 5 are being solicited and are entitled to vote to accept or reject the Plan.

**Class 1 - Priority Claims.**  Class 1 consists of all Priority Claims.

**Class 2 -Other Secured Claims.**  Class 2 consists of all Other Secured Claims

**Class 3 – U.S. Bank Secured Claim.**  Class 3 consists of the claims of the U.S. Bank Secured Claim.

**Class 4 – General Unsecured Claims.**  Class 4 consists of all Unsecured Claims.

**Class 5 – Equity Interests.**  Class 5 consists of all Allowed Interests in the Debtor.

TREATMENT OF CLAIMS AND INTERESTS CLASSIFIED UNDER THE PLAN

Article 4 of the Plan provides for the treatment of Claims and Interests classified in Article 3 of the Plan as follows:

**Class 1 - Priority Claims**. Unimpaired. Class 1 consists of Priority Claims. Unimpaired. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent,

(i) in Cash, in the full amount of each Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

**Class 2 – Other Secured Claims**. Unimpaired. Class 2 consists of Other Secured Claims. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of the Priority Claims, the holders of Other Secured Claims shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of  a Other Secured Claim shall receive payment from the Disbursing Agent, (i) in Cash, in the full amount of each Other Secured Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

**Class 3** –  **U.S. Bank Secured Claim**.  Impaired. Class 3 consists of the claim of the U.S. Bank Secured Claim. Subject to the provisions of Article 7 of the Plan, with respect to Disputed Claims, in full satisfaction, settlement and release of, and in exchange for, the U.S. Bank Secured Claim,  U.S. Bank shall receive on the Effective Date, the New U.S. Bank Note.  The U.S. Bank Secured Claim, as evidenced by the New U.S. Bank Note, in the principal amount of $704,579.64, shall be secured by the same collateral U.S. Bank held prior to the Petition Date.  The New U.S. Bank Note shall accrue interest at rate of 4.35%, payable on a monthly basis, as set forth in the New U.S. Bank Note, and shall mature on the thirtieth (30th) anniversary of the Effective Date.  On the maturity date, any remaining principal due plus all accrued interest shall be due and payable, provided however, that the Reorganized Debtor/Disbursing Agent shall be permitted to prepay the New U.S. Bank Note at any time without premium or penalty. After 30 years of payments, U.S. Bank will have received payments totaling $1,262,693.45.

**Class 4 – General Unsecured Claims**.  Impaired. Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Class 4 General Unsecured Claims, the holder of such Claims shall receive the following treatment: on the Effective Date, or as soon as possible after such Claims become Allowed Claims, each holder of a Class 4 General Unsecured Claim shall receive from the Disbursing Agent, unless otherwise agreed in writing between the Debtor and the holder of such Claim, its Pro Rata payment from the Unsecured Creditors' Fund.

**Class 5 - Equity Interests**.  Class 5 consists of Equity Interests. Class 5 Equity Interests are not receiving any distribution under the Plan but are entitled to continued ownership of Interests based upon their funding of the Unsecured Creditors' Fund.

TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.  Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Administrative Claims.**  Administrative Claims are the costs and expenses of administration of this Case, allowable under section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees.

Administrative Claims include Claims for the provision of goods and service to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under section 330 of the Bankruptcy Code, and tax claims for the period from the Petition Date to the Effective Date of the Plan.

Each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

Article 2 of the Plan sets a final date for the filing of Administrative Claims against the Debtor. The Administrative Bar Date is the first Business Day that is at least 60 days after the Effective Date.

Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by the Debtor and the Committee in a case under the Bankruptcy Code. In general, bankruptcy legal services are entitled to command the same competency of counsel as other cases. "In that light, the policy of this section is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11." 124 Cong. Rec. H11091 (Daily ed. Sept. 28, 1978).

**Bankruptcy Fees.** All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code shall be paid by the Disbursing Agent in Cash in full as required by statute.

**Professional Fees.** Reasonable compensation due to the Debtors' professionals pursuant to section 330 of the Bankruptcy Code, as determined by the Bankruptcy Court, shall be payable in full and in Cash on the Effective Date unless otherwise agreed to in writing between the holder of such claim and the Debtor and approved by the Bankruptcy Court. Unless otherwise agreed to in writing by the Debtor and the applicable professional, each professional must serve the Debtor with a writing indicating the sum of fees and expenses they intend to apply to the Court for reimbursement of and/or an award of, no later than three days prior to the Effective Date. Upon receipt of such notice, the Debtor must escrow sufficient funds, to be held in an interest-bearing segregated account, in the amounts necessary to pay such claims when and if allowed by the Court.

**Priority Tax Claims.**  Except as may be otherwise mutually agreed in writing, all Allowed Claims of Governmental Units entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code, shall be paid in full and receive on account of such claim Cash on the Effective Date.

## DISPUTED CLAIMS AND INTERESTS

Article 7 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any Entity.

**Time to Object.**  Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed no later than the later to occur of (i) 60 days after the Effective Date or (ii) 60 days after the date proof of such Claim or Interest is filed.  Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

## DISTRIBUTIONS UNDER THE PLAN

Article 7 contains provisions governing the making of distributions on account of Claims and Interests.  In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made if made on or within five days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest or (iii) such other times provided in the Plan. All Cash payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.**  Shafferman & Feldman LLP, Counsel for the Debtor, shall be the Disbursing Agent to make distributions under the Plan for all claims, with the exception of making payments under the New U.S. Bank Note. The Disbursing Agent shall not be compensated for services rendered under the Plan.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim or Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.  If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Neither the Debtor nor the Disbursing Agent shall be required to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

### UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan shall revert to the Reorganized Debtor and such creditor shall forfeit its right to receive any distribution(s) under this Plan if such distribution is not claimed by the Entity entitled thereto before the later of (i) 1 year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order or are otherwise Allowed.

### DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

While an objection to any Claim or Interest is pending, no distribution under the Plan will be made to the holder of such Claim or Interest.  However, subject to the restrictions set forth in the next paragraph, there will be set aside and reserved on behalf of such disputed Claim or Interest such cash or property as the holder thereof would be entitled to receive in the event such Claim or Interest was an Allowed Claim or an Allowed Interest on the date of such distribution.  The Debtor may seek an order of the Bankruptcy Court estimating or limiting the amount of Cash or property that must be deposited in respect of any such disputed Claims or Interests.  Cash held in reserve for disputed Claims will be held in trust for the benefit of the holders of such Claims.

The amount to be so segregated on behalf of Disputed Claims depends upon whether such claim is an Unsecured Claim or a claim other than an Unsecured Claim. If a Disputed Claim is not an Unsecured Claim, the Disbursing Agent shall segregate Cash equal to 100% of the amount which would be distributed on account of such Disputed Claim if such Claim had been an Allowed Claim but for the pendency of the objection. Until such the dispute over the claim is resolved, the Disbursing Agent shall also segregate any interest or dividends earned upon such amount it is holding on account of such Disputed Claim.

If the Disputed Claim had been an Allowed Unsecured Claim but for the pendency of such objection, the Disbursing Agent shall be obligated to segregate an amount equal to 100% of the amount which would have been distributed on account of such Claim if such Claim had been an Allowed Claim on such date. Deposits in escrow on account of any Disputed Unsecured Claims shall be made annually thereafter, at least ten days prior to the anniversary of the Effective Date until all pending disputes are resolved. The Disbursing Agent shall also hold any interest or dividends earned on such funds until the dispute over such claim is resolved.

Within 30 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property held in escrow with respect to such claim, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.  To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof; however, the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.  Any segregated amounts remaining after all Disputed Claims and Interests have been resolved will be retained by the Debtor.

15

**SURRENDER OF INSTRUMENTS**

Notwithstanding the foregoing, no Creditor that holds a note or other instrument of the Debtor evidencing such Creditor's Claim may receive any distribution with respect to such Claim or Interest unless and until the note or other instrument evidencing such Claim is surrendered pursuant to the provisions of the Plan.  In the event an instrument evidencing a claim has been lost, stolen or mutilated, the Disbursing Agent may request reasonable affidavits and indemnification by a financially responsible party before making any distribution(s) to such Creditor.

**COMPLIANCE WITH TAX REQUIREMENTS**

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements.

**EFFECTIVE DATE**

The Effective Date of the Plan is defined as the 15th day after the Bankruptcy Courts entry of an order confirming the Plan.

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

All Executory Contracts, to the extent not previously rejected or assumed or designated to be assumed and assigned pursuant to the Plan, shall be deemed assumed. The following unexpired residential leases (the "Leases") are to be assumed under the Plan:

| Tenant and Unit: | Carlos Berroa | Unit 7 |
| | Elisaveta Kostadinova | Unit 3 |
| | Fakher Salam | Unit 8 |
| | Felix A Flores | Unit 1 |
| | Jaime Jose Andres Aimeida | Unit 1 |
| | Jose Ramon Baldiviezo | Unit 6 |
| | Noemi Diaz and Noemi Ruiz | Unit 5 |
| | Victor Mendez | Unit 4 |

The Debtor does not believe that the above tenants have any claim against the Debtor that must be cured before it assumes the Lease.

Any claim that the Debtor must cure prior its assumption of the Leases shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the Effective Date.

Any claim for damages arising from the rejection of any lease or executory contract shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the

Effective Date.

### IMPLEMENTATION OF THE PLAN

#### Source of Funds

Effective Date payments under the Plan to the holders of Allowed Administrative Claims, statutory fees, and Allowed Claims in Classes 1, 2, and 3 will be paid rental income generated from tenants at the Property and by capital to be contributed by McKarkein Capital LLC, the Debtor's Interest Holder, if necessary.

#### TAX EXEMPTION

The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of either of the Property and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

#### PRESERVATION OF RIGHTS OF ACTION

The Debtor shall retain, and in accordance with its determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under sections 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate, and arising under any provision of state or federal law, or any theory of statutory or common law or equity.

#### Vesting of Assets.

Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

#### POST-CONFIRMATION OPERATING REPORTS AND UNITED STATES TRUSTEE'S FEES

The Debtor shall be responsible for the preparation and filing of monthly operating reports until entry of a final decree, dismissal or conversion of this case, whichever is earlier. Quarterly fees payable to the Office of the United States Trustee shall be paid by the Debtor until entry of a final decree, dismissal or conversion of this case, whichever is earlier.

**TRANSFER TAXES**

To the extent allowed by section 1146(a) of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions contemplated by the Plan) shall be exempt and shall not be subject to tax under any law imposing a Transfer Tax, mortgage recording tax or similar tax as set forth in the Plan.

**REVOCATION OF THE PLAN**

The Debtor may revoke or withdraw the Plan at any time prior to the Bankruptcy Court's conclusion of the Confirmation Hearing.  If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

**RETENTION OF JURISDICTION**

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes relating to Claims or Interests and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan.

**RISK FACTORS**

The Debtor believes that the confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor. No statements or information concerning the Debtor or its assets, future business operations, results of operations or financial condition or the securities to be issued pursuant to the Plan, are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

**VOTING INSTRUCTIONS**

A Creditor and Interest Holder who is entitled to vote may  accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement.  See "VOTING INSTRUCTIONS -- Who May Vote."  The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

**DEADLINE FOR RECEIPT OF BALLOTS**

The solicitation period for votes accepting or rejecting the Plan will expire at 5:00 p.m., Eastern Standard Time,  **August            2026** (the "Voting Deadline").  A Ballot accepting or

rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

### BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by **August    2026 at 5:00 p.m. (Prevailing Eastern Time)** to:

> Shafferman & Feldman LLP
> 137 Fifth Avenue, 9th Floor
> New York, New York 10010
> Attn: Joel Shafferman, Esq.

(the "Balloting Agent"). A Creditor or Interest Holder entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Joel Shafferman at (212) 509-1802 or (917) 847-8050 to receive a replacement Ballot.

### WHO MAY VOTE - IN GENERAL

Claims in Class 3 and 4, and interests in Class 5 are impaired under the Plan. Holders of Claims in Class 3 and 4, and interests in Class 5 are being solicited and are entitled to vote to accept or reject the Plan. Claims in Classes 1 and 2 are not impaired by the Plan and are deemed to have accepted the Plan.

**Ballots Executed in a Representative or Fiduciary Capacity**. Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims**. A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one impaired Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus, each Person need complete only one ballot for each Class.

19

### DEFECTS OR IRREGULARITIES

**IN THE EVENT AN EXECUTED AND TIMELY FILED BALLOT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN, THE BALLOTING AGENT SHALL NOTIFY THE CREDITOR OR INTEREST HOLDER WHICH HAS EXECUTED THE BALLOT SO THAT ALL BALLOTS THAT ARE CAST INDICATE EITHER AN ACCEPTANCE OR A REJECTION OF THE PLAN.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Except as set forth above, neither the Debtor, the Balloting Agent, nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

### REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Creditor or Interest Holder who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, must (i) describe the Claim or Interest represented by such Ballot, (ii) be signed by the Creditor or Interest Holder in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## CONFIRMATION OF PLAN

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to commence before Bankruptcy Judge Elizabeth S. Stong on **August  2026 at  m** (Prevailing Eastern Time). The Confirmation Hearing will be conducted in person. It is necessary to contact the Courtroom Deputy to request prior authorization to appear remotely. Whether appearing in person or remote, please use eCourt Appearances to register to appear at a hearing. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and the party that you represent, if applicable. Please

be sure to register at least two business days before your hearing. For remote hearings, you will receive instructions on how to access the hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. Alternatively, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. In the event that you are not able to register online, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days prior to the hearing date.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before September 8, 2025 at 5:00 pm. Objections must be served upon (i) Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn.: Joel Shafferman, Esq., and (ii) United States Trustee, Office of the United States Trustee, Brooklyn Office – Region 2, Alexander Hamilton Custom House, One Bowling Green, Suite 510, New York, NY 10004-1408, Attn: Jeremy Sussman, Esq., and filed electronically in accordance with the Court's ECF procedures.

### REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interests" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances.  The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.

To determine what the holders in each Class of Claims or Interest would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtor at the commencement of the chapter 7 case.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs

and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business. Such value is then juxtaposed against the amount creditors are receiving under the Plan to determine if the value each impaired creditor is receiving is the same or more than such creditor would receive from a chapter 7 liquidation on the Confirmation Date.

The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation.  Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such trustee may engage to assist in the liquidation.  In addition, chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation.  Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.

After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to section 1102 of the Bankruptcy Code.

After consideration of the effects that a chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a chapter 7 liquidation arising from fees payable to the trustee in bankruptcy and professional advisors to such trustee, (ii) the erosion in value of the Debtor's assets in a chapter 7 case in the context of the expeditious liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, (iii) the potential increases in Claims which would be satisfied on a priority basis or on a parity with the Claims of General Unsecured Creditors and (iv) the substantial amount of secured obligations in this case, the Debtor believes that in a chapter 7 liquidation there would be insufficient funds available to satisfy all of the administrative and secured debt on the Property and no funds available for distribution to unsecured creditors.

**Liquidation Analysis.**  The Debtor believes that in the event their assets were sold in chapter 7 liquidation, all of the proceeds would go to pay chapter 7 administrative claims, bankruptcy fees, any New York City Secured Tax Claim, and a portion of the U.S. Bank Secured Claim. In such an event, no funds would be remaining for distribution to Chapter 11 Administrative Claims, Other Secured Claims and Unsecured Creditors. As such, the Debtor believes that no Creditors or interest holders would receive a distribution in a Chapter 7 case which is greater than the one they may be entitled to under the Plan.

The Debtor further believes that the net effect of a conversion of these cases to chapter 7 would be to (i) increase the administrative expenses of the estate and (ii) decrease the funds available for non-administrative creditors. The liquidation values stated herein assume that the Property would be liquidated in the context of a chapter 7 case and assumes the present values of such liquidation values as of May, 2026. The assumptions utilized in the analysis considered the estimated liquidation

22

value of the Property and estimated amount of Claims that would be allowed, together with an estimate of certain administrative costs and other expenses which would likely result during the liquidation process. While the Debtor believes the assumptions underlying the Liquidation Analysis are reasonable, the validity of such assumptions may be affected by the occurrence of events, and the existence of conditions not now contemplated or by other factors, many of which will be beyond the control of the Bankruptcy Court, the Debtor and any trustee appointed for the Debtor. The actual liquidation value of the Property may vary from that considered herein and the variations may be material.

In the event of a liquidation of the Property, there would be less funds to satisfy the U.S. Bank Secured Claim in full, and no funds available to pay Chapter 11 Administrative Claims, Other Secured Claims, and claims of Allowed Unsecured Creditors.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

Based upon the projections, a copy of which are attached hereto as **Exhibit "B"**, The Debtor believes that the Plan is feasible and will meets its burden of showing that the Plan is feasible at the Confirmation Hearing.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be confirmed if each impaired Class of Claims or Interests accepts the Plan. Classes of Claims or Interests which are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims or Interests impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims or Interests not impaired by the Plan, are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of Claims or Interests that will neither receive nor retain any property under the Plan are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

**Confirmation Without the Acceptance of Each Impaired Class**. In the event that any impaired Class of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. The Debtor believes that the Plan is in the best

interest of all Creditors and Interest holders and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that under the Plan all classes of Impaired Claims and Impaired Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests with which their legal rights are intertwined, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule." Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Secured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Secured Claims if the holders of such Claims retain their liens and each holder of a Claim of such class receives on account of such Claim deferred cash payments, totaling at least the allowed amount of such Claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interest in the property securing its Claim.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. Under the plan Interests of Equity shall not receive any distribution and shall make a capital contribution to fund the Plan. Therefore, this requirement will be met in this case.

With respect to Equity Interests, Section 1129(b)(2)(C) requires that the holder of such interest receive any fixed liquidation preference, fixed redemption price or the value of such interest or that no junior interest will receive or retain any property on account of such junior interest under the Plan. To the best of the Debtor's knowledge, interest holders are not entitled to any fixed liquidation preference or fixed redemption price. Moreover, the Debtor has determined that the value of such interest is **zero**. Finally, no junior interest receives or retains any property under the Plan on account of such interest. Accordingly, the Debtor believes the Plan complies with Section 1129(b)(2)(C) of the Bankruptcy Code.

If the Plan is rejected by Classes 3 or 4, the Debtor requests that the Plan be confirmed under Section 1129(b).

24

## EFFECT OF CONFIRMATION

### DISCHARGE

On the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, the Plan shall: (i) discharge the Debtor and any of its Assets from all Claims, demands, liabilities and other debts that arose on or before the Effective Date, including, without limitation, all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (B) a Claim based on such debt is Allowed pursuant to section 502 of the Bankruptcy Code, (C) a Claim based on such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based on such debt has accepted this Plan; and (ii) preclude all entities from asserting against the Debtor or any of its Assets any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, all pursuant to sections 524 and 1141 of the Bankruptcy Code. The discharge provided in this provision shall void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim. The Debtor shall be discharged from any Claims and agreements related to debts that arose on or before the Effective Date and such debts, Claims and agreements are deemed restructured and new as set forth in the Plan.

### INJUNCTION

Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any claim or interest held as of the Effective Date, (y) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from property of the Estate that has been, or is to be, distributed under the Plan, and (z) the creation, perfection or enforcement of any lien or encumbrance against the property of the Estate that has been, or is to be, distributed under the Plan.

Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset, from the Debtor, from the Property, or from property of the Estate, any claim, obligation or debt that was held by any person or entity as of the Effective Date except pursuant to the terms of the Plan.

### LIMITATION OF LIABILITY

Section 1125(e) of the Bankruptcy Code, commonly referred to as the "safe harbor," protects persons acting in good faith, from civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan. Pursuant to section 1125(e), as set forth in Article 9 of the Plan, neither the Debtor, U.S. Bank nor any of their respective officers, directors, members, general partner, managers or

25

employees (acting in such capacity), nor any professional person employed by any of them shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts. Nothing contained herein shall limit the liability of the Debtor's professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute, and may be submitted as, a complete defense to any claim or liability released pursuant to Article 8 of the Plan.

### CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Debtor has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will the Debtor, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel. Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Debtor offers no statements or opinions that are to be relied upon by the creditors as to the treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim or Equity Interest

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to Creditor and Interest Holders will differ and will depend on factors specific to each Creditor and Interest Holder, including but not limited to: (i) whether the Claim or Interest (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim or Interest; (iii) the type of consideration received by the Creditor and Interest Holder in exchange for the Claim; (iv) whether the Creditor and Interest Holder is a United States person or foreign person for tax purposes; (v) whether the Creditor and Interest Holder reports

income on the accrual or cash basis method; (vi) whether the Creditor and Interest Holder has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR AND INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR AND INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AND INTEREST HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR AND INTEREST HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR AND INTEREST HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR AND INTEREST HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to (i) the Debtor's counsel, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn.: Joel Shafferman, Esq., (212) 509-1802, shaffermanjoel@gmail.com, or (ii) may be retrieved from the Court's web site at https://ecf.nyeb.uscourts.gov/cgi-bin/login.pl (provided such party has PACER access) by searching case no 25-42224.

## CONCLUSION

The Debtor believes that confirmation of the Plan is in the best interests of all Creditors and Interest Holders.


**DATED**:       May 26, 2026              FIA Capital Partners, LLC


                                          _/S/ David Goldwasser_____
                                          David Goldwasser, as Chief
                                          Restructuring Officer

**DATED:**     New York, New York
               May 26, 2026


                                          SHAFFERMAN & FELDMAN LLP
                                          Counsel for the Debtor
                                          137 Fifth Avenue, 9th Floor
                                          New York, New York 10017
                                          (212) 509-1802

                                          By _/S/ Joel Shafferman_____
                                               Joel M. Shafferman